UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

Shannon Sherman and          :
Simple Man, Inc.,            :
                             :
        Plaintiffs,          :
                             :
            v.               :     File No. 1:08-CV-207
                             :
Ben & Jerry's Franchising, Inc.,  :
and Ben & Jerry's Homemade, Inc.,  :
                             :
        Defendants.          :


OPINION AND ORDER
(Papers 38, 64)

Plaintiffs, former owners of a Ben & Jerry's Franchise in

Virginia, filed a twelve count complaint alleging Defendants

committed various civil wrongs related to the parties' franchise

agreement.  Before the Court is Defendants' Motion to Dismiss

Plaintiffs' Amended Complaint under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief

can be granted.  (Paper 64.)  For the following reasons,

Defendants' Motion is GRANTED in part and DENIED in part.

I.   Background

Facts alleged in the complaint are assumed to be true for

the purposes of a motion to dismiss.  Shannon Sherman is the

founder and president of Simple Man, Inc., a Virginia

corporation.  On August 2, 2004, Sherman and Simple Man, Inc.

("Plaintiffs") entered into a Development Agreement with

Defendant Ben & Jerry's Franchising, Inc. ("Ben & Jerry's") under which the parties agreed Plaintiffs would open three Ben & Jerry's Scoop Shops in the Lynchburg-Roanoake-Christianburg, Virginia area.  Plaintiffs entered the Development Agreement based, in part, upon the 2002 and 2003 earnings information contained in a Uniform Franchise Offering Circular ("UFOC") Ben & Jerry's provided to prospective franchisees.  Each UFOC included information about the average and median gross sales and variable costs for existing Ben & Jerry's franchise Scoop Shops.  Ben & Jerry's also provided earnings information for current franchise shops on its "extranet," a Ben & Jerry's website with postings regarding the company.

Sherman pursued opening the scoop shops.  Ben & Jerry's required franchisees to submit prospective store locations for approval based on published criteria.  Sherman proposed a site in Blacksburg, Virginia which Ben & Jerry's approved although it did not meet the published criteria.  The parties entered into a Franchise Agreement for that shop on October 21, 2004.  Sherman later proposed a site in Christianburg, Virginia, which Ben & Jerry's rejected even though it met the published criteria.  On two occasions, a representative told Sherman Ben & Jerry's retained the right to sell products through "White Napkin, White Tablecloth" restaurants in areas near Sherman's scoop shop.  These "finer restaurants" would, however, be restricted in their

advertising and would not be allowed to sell pre-packaged ice cream to-go.

Sherman began operating a Ben & Jerry's scoop shop in February 2005. The scoop shop operated at a loss each year, and she attributes the lagging sales in part to various misrepresentations allegedly made by Ben & Jerry's. Sherman claims Ben & Jerry's sold its products through two local restaurants that did not fit the description of "White Napkin, White Tablecloth" restaurants, and that these restaurants openly advertised Ben & Jerry's products and also packaged them to-go – all in violation of Ben & Jerry's employees' representations to her. Ben & Jerry's also implemented advertising promotions paid for with franchisees' fees that did not sell ice cream, but instead promoted a political agenda. For example, Ben & Jerry's "Waffle Truth" campaign directed customers to Al Gore's website and encouraged them to buy his book or DVD. Sherman also alleges Ben & Jerry's failed to provide ongoing support and training in violation of the parties' Franchise Agreement. Furthermore, the support Ben & Jerry's did provide Sherman through its "Stores in Trouble" program was, according to her, unprofessional and flawed.

According to Sherman, Ben & Jerry's intentionally distorted the earnings information provided in the UFOC and extranet in an effort to induce prospective franchisees to open stores destined

to fail.  Sherman claims she would not have signed the Franchise Agreement or opened a Ben & Jerry's store if it had presented correct earnings data.

## II.  Motion to Dismiss Standard

In a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court will grant a motion to dismiss only if the Plaintiff cannot show some "plausible entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).  Jurisdiction of this matter is based on diversity, 28 U.S.C. §§ 1332, and the Court applies Vermont law in accord with the choice of law provision in the parties' Franchise Agreement.  (Paper 64-19 at 46.)

## III. Discussion

The gravamen of Plaintiffs' Amended Complaint is that Defendants fraudulently induced them to enter into a Ben & Jerry's franchise agreement by misrepresenting key information, and then drove the shop to economic failure by refusing to

provide ongoing assistance, siphoning customers away by distributing products through local restaurants and alienating customers with politically divisive marketing campaigns. Plaintiffs' Amended Complaint includes twelve counts, each of which is addressed below.

A.   Fraud, Negligent Misrepresentation and Estoppel Claims

Plaintiff's Amended Complaint includes four counts alleging Ben & Jerry's fraudulently or negligently misrepresented facts which induced Plaintiffs to enter into and continue in the Franchise Agreement.

1.   Fraudulent Inducement (Count I)

Plaintiffs first claim Ben & Jerry's induced them to purchase the franchise by misrepresenting earnings data in Item 19 of the UFOC.  To establish fraudulent inducement under Vermont law, Plaintiffs must ultimately prove the following elements: an intentional misrepresentation of fact affecting the essence of the transaction, false when made and known to be false by the maker, not open to the defrauded party's knowledge, and relied upon by the defrauded party to its damage.  Union Bank v. Jones, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980).  The person who relies on the misrepresentation must have done so "justifiably." Sugarline Assocs. v. Alpen Assocs., 155 Vt. 437, 445, 586 A.2d 1115, 1120 (1990).  In this case, Plaintiffs' UFOC Item 19 claim

fails because reliance on Defendants' alleged misrepresentations was unreasonable as a matter of law.

Resolution of this claim requires a factfinder to look outside the four corners of the parties' contract because Plaintiffs agreed the Franchise Agreement constituted the parties' entire agreement, and that no other representations induced them to enter the contract. (Paper 64-19 at 45.) In determining whether to allow claims based on communications outside the contract, courts must strike a balance between the competing values of contractual certainty and protecting innocent parties from fraud. Turner v. Johnson & Johnson, 809 F.2d 90 (1st Cir. 1986). These competing values are expressed in two lines of precedent in Vermont. On one hand, there is the well-established general rule that extrinsic evidence is not admissible to vary or contradict an unambiguous written contract. Isbrandtsen v. North Branch Corp., 150 Vt. 575, 577, 556 A.2d 81, 83 (1988). On the other hand, boilerplate integration clauses and disclaimers will not, as a rule, preclude a claim of fraudulent inducement based on statements not contained in the contract. Negyessy v. Strong, 136 Vt. 193, 194, 388 A.2d 383, 385 (1978) ("When the misrepresentation relates to the inducement to enter a contract . . . the misrepresentations cannot be avoided by a parol evidence claim that they are merged into the terms of the agreement."). With these competing principles in

hand, the Court considers the challenges to Plaintiffs'
fraudulent inducement claims.

First, Plaintiffs explicitly disclaimed reliance on any
representation outside the contract by agreeing "[The Franchise
Agreement], the attachments hereto, and the documents referred to
herein constitute the entire Agreement between BEN & JERRY'S and
OPERATOR concerning the subject matter hereof, and <u>supercede any
prior agreements</u>, <u>no other representations having induced
OPERATOR to execute this Agreement</u>." (Paper 64-19 at 45
(emphasis added).) The Court's analysis does not end here,
because, as stated above, general disclaimers and merger clauses
do not necessarily bar fraudulent inducement claims under Vermont
law. <u>See</u> <u>Negyessy</u>, 136 Vt. at 194. The parties' agreement in
this case, however, contained more than just a vague or general
merger clause. UFOC Item 19 and the Franchise Agreement also
included specific, clearly stated warnings and disclaimers
relating to Plaintiffs' expected profits. UFOC Item 19 states:

> The information set forth in this Item 19
> aggregates the gross sales and key variable
> cost percentages of individual Scoop Shops.
> It should not be considered as the actual or
> probable sales or costs that may be realized
> by any franchisee. We do not represent that
> any franchisee or Scoop Shop can expect to
> obtain the reported results. Actual results
> vary from Scoop Shop to Scoop Shop, and we
> cannot estimate the results of any specific
> Scoop Shop. A new franchisee's Scoop Shop
> results are likely to differ from those of
> established Scoop Shops. We recommend that
> you make your own independent investigation

and evaluation of the potential performance
of your Scoop Shop, and consult with your
attorney and other advisors before signing
any franchise agreement. . . . Actual results
are dependent on a variety of internal and
external factors, none of which either we or
a franchisee can estimate, such as
competition, taxes, the availability of
financing, general economic climate,
demographics, weather, changing consumer
preferences and the franchisee's own
commitment to the business.

(Paper 64-18 at 7.)  The Franchise Agreement stated:

OPERATOR acknowledges that it has conducted
an independent investigation of the business
of operating a scoop shop, and recognizes
that the business venture contemplated by
this Agreement involves business risks and
that its success will be largely dependent
upon the ability of OPERATOR . . . as (an)
independent businessperson(s).  BEN & JERRY'S
expressly disclaims the making of, and
OPERATOR acknowledges that it has not
received, any warranty or guarantee, express
or implied, as to the potential volume,
profits, or success of the business venture
contemplated by this agreement.

(Paper 64-19 at 48.)  Where a seller <u>expressly</u> disclaims any

express or implied warranty concerning <u>specific</u> representations,

and a buyer <u>expressly</u> acknowledges the disclaimer and the need to

conduct an independent investigation, that party may not sue on a

claim she was defrauded into entering the contract in reliance on

those very representations.  <u>C.f.</u> <u>Sugarline Assocs. v. Alpen</u>

<u>Assocs.</u>, 155 Vt. 437, 445-47, 586 A.2d 1115 (1990) (holding

plaintiff could not show justifiable reliance on fraudulent

nondisclosure claim, even if defendants deliberately withheld

8

information, where defendant disclaimed knowledge and expressly refused to elaborate on withheld information); see also R.J. Wildner Contracting Co. v. Ohio Turnpike Comm'n, 913 F. Supp. 1031, 1040 (N.D. Ohio 1996) (applying Ohio law, court granted motion to dismiss where reliance on representation was unreasonable as a matter of law because contract contained specific disclaimer and warning); Mfrs. Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993) (holding under New York law, where "contracting party disclaims the existence of or reliance upon specific representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations [but] general and vague merger clause would not bar parol evidence to support a fraud claim.") On the facts presented here, the Court finds Plaintiffs have not shown a plausible entitlement to relief under Rule 12(b)(6). Plaintiffs' fraudulent inducement claim based on UFOC Item 19 is dismissed.

Plaintiffs next claim they were induced to enter the Franchise Agreement by alleged assurances that Ben and Jerry's would only allow "White Napkin, White Tablecloth" restaurants to sell Ben & Jerry's products near Plaintiffs' store and that these restaurants would not be allowed to advertise or sell pre-packaged ice cream. Defendants argue this claim is barred because (1) the economic loss rules applies, (2) parol evidence

of an oral agreement is not admissible to vary or contradict the terms of a written contract, and (3) Plaintiffs agreed under the Franchise Agreement's integration clause that they were not relying on outside representations.  Under Vermont's well-established economic loss rule, "claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract." Springfield Hydroelectric Co. v. Copp, 172 Vt. 311, 314, 779 A.2d 67 (2001).  Defendants cite no Vermont precedent, however, establishing whether the economic loss rule applies to fraud in the inducement claims.  The Court's research reveals states have taken different positions on this issue, See Ralph C. Anzivino, The Fraud in the Inducement Exception to the Economic Loss Doctrine, 90 Marq. L. Rev. 921, 931-34 (2007), and Vermont's position has not yet been decided.[1]  Thus, the Court rejects Defendants' motion to dismiss on this basis.  As for Defendants' parol evidence argument, as explained above, the parol evidence rule does not necessarily preclude this claim because "proof of fraud in the inducement will defeat the bar of the parol evidence rule."  Big G Corp. v. Henry, 148 Vt. 589, 594, 536 A.2d 559 (1987).  Here, in contrast to Plaintiffs' UFOC Item 19 claim,

---

[1]It is clear under Vermont law that a tort claim should be dismissed when it merely restates a breach of contract claim, i.e., when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract, see Bevins v. King, 147 Vt. 203, 204-5, 514 A.2d 1044 (1986), however, that is not the claim presented here.

there is no specific disclaimer stating Plaintiffs did not rely on the alleged statements. The Court may determine whether Plaintiffs qualify for the parol evidence rule's fraud exception on a motion for summary judgment backed by a developed factual record.

Plaintiffs next claim Ben & Jerry's "made false misrepresentations" on a company website ("the extranet") which fraudulently induced Plaintiffs "into continuing in the franchise." (Compl. ¶ 79.) Defendants move to dismiss this claim, arguing Plaintiffs failed to comply with the heightened pleading standard under Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); <u>Rombach v. Chang</u>, 355 F.3d 164, 170 (2d Cir. 2004). Rule 9(b)'s particularity requirement provides defendants with fair notice of a plaintiff's claim and safeguards reputations from improvident charges of wrongdoing. <u>Id.</u> at 171. Under the Rule, a fraud claim must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." <u>Id.</u> at 170. Plaintiffs' extranet claim fails to specify the most basic "circumstances constituting fraud", such as what information Plaintiffs claim was misleading or how the

information lead Plaintiffs to continue in the franchise. Defendants' motion to dismiss this claim is granted.

### 2. Fraudulent Nondisclosure (Count II)

Plaintiffs next claim Ben & Jerry's fraudulently withheld information from the UFOC Item 19 and extranet, and as a result "realized reduced sales and revenue relative to their expectations, reasonably formed based on data provided by Ben & Jerry's." (Compl. ¶ 84.) Recovery requires "the party claiming fraud justifiably relied on the statements or conduct of the other." Sugarline Assocs., 155 Vt. at 445. As discussed above, the justifiable reliance element is missing in Plaintiffs' UFOC Item 19 claim.

In Sugarline Assocs., the Vermont Supreme Court reversed judgment for the purchaser of a hotel who claimed the seller fraudulently failed to disclose information about the property's septic system. The court cited the following facts as central to its holding that the purchaser could not show justifiable reliance, even if defendants withheld information deliberately: (1) defendant expressly disclaimed knowledge of the withheld information; (2) defendant never claimed the information furnished represented full disclosure; (3) defendant never discouraged independent investigation and (4) defendant may have actually invited further investigation. Id. at 445-47. The court concluded "these were signals that would lead a reasonable

buyer <u>not</u> to rely on an assumption that all relevant documents or information had been disclosed, but, to the contrary, to investigate further." <u>Id.</u> at 445. The court held "a duty to investigate is triggered when, as here, the buyer is put on notice by the seller's declaration of ignorance of the material facts." <u>Id.</u> at 447. Here, UFOC Item 19 put Plaintiffs on notice that Ben & Jerry's "did not represent that any franchisee or Scoop Shop can expect to obtain the reported results", "[a]ctual results vary from Scoop Shop to Scoop Shop," "[Ben & Jerry's] cannot estimate the results of any specific Scoop Shop", and "[a] new franchisee's Scoop Shop results are likely to differ from those of established Scoop Shops." (Paper 64-18 at 6.) Ben & Jerry's also explicitly "recommend[ed] that [Plaintiffs] make [their] own independent investigation and evaluation of the potential performance of [their] Scoop Shop." (<u>Id.</u>) Indeed, Ben & Jerry's offered "[s]ubstantiation for the information contained in [the] Item 19 . . . upon reasonable request" (Paper 64-18 at 6), and provided Plaintiffs with contact information for over 260 franchisees located across the United States. (<u>Id.</u> at 8–27.) Likewise, Ben & Jerry's "expressly disclaim[ed] the making of, and [Plaintiff] acknowledg[ed] that it has not received, any warranty or guarantee, express or implied, as to the potential volume, profits, or success of the business venture contemplated by this agreement." (Paper 64-19 at 48.) These disclaimers and

warnings clearly triggered a duty to investigate.  Plaintiffs'
reliance was not justified, and the fraudulent disclosure claim
based on Item 19 is dismissed.  Plaintiffs' fraudulent
nondisclosure claim as to the extranet is also dismissed because
this claim was not pled with sufficient particularity under
Vermont Rule of Civil Procedure 9(b) as discussed in Section
III.A.1.

<h3>3.   Fraud (Count III), Negligent Misrepresentation (Count IV) and Estoppel (Count V)</h3>

Plaintiffs' fraud, negligent misrepresentation and estoppel
claims are based on the same sets of facts discussed above.  For
the reasons enumerated in Section III.A.1 and 2, the Court
rejects Defendants' motion to dismiss the fraud, negligent
misrepresentation and estoppel claims based on Defendants'
alleged "White Napkin, White Tablecloth" statements.  The Court
grants, however, Defendants' motion to dismiss Plaintiffs' fraud,
negligent misrepresentation and estoppel claims as to UFOC Item
19 and the extranet.  The claims related to UFOC Item 19 are
dismissed because a party claiming fraud, negligent
misrepresentation or estoppel must show justifiable reliance.
Sugarline Assocs., 155 Vt. at 445 (must show justifiable reliance
to recover for fraud); Hedges v. Durrance, 175 Vt. 588, 591, 834
A.2d 1 (2003) (for negligent misrepresentation); Cmty. Nat'l Bank
v. State, 172 Vt. 616, 619, 782 A.2d 1195 (2001) (under estoppel
theory).  As discussed in Sections III.A.1 and 2, Plaintiffs

cannot, as a matter of law, show justifiable reliance on the UFOC
Item 19 disclosures.  Plaintiffs' fraud, negligent
misrepresentation and estoppel claims with respect to the
extranet are dismissed because the claims were not pled with
sufficient particularity under Vermont Rule of Civil Procedure
9(b), as set forth in Section III.A.1.

B.    Breach of Contract (Count VI) and Breach of the
      Covenant of Good Faith and Fair Dealing (Count VII)

Plaintiffs claim Defendants breached the Franchise Agreement
by (1) failing to enforce the "White Napkin, White Tablecloth"
program, (2) misusing advertising money paid by franchisees to
fund a political agenda rather than Ben & Jerry's products,
(3) failing to approve the Christianburg location although it met
Ben & Jerry's published criteria, (4) "general lack of marketing
support", and (5) failing to provide training and ongoing
support.  Plaintiffs also claim Defendants breached the covenant
of good faith and fair dealing by selling Ben & Jerry's products
at two area restaurants that did not fit Defendants' "White
Napkin, White Tablecloth" restaurant description.

Plaintiffs' first claim is that Defendants breached the
Franchise Agreement by failing to enforce the "White Napkin,
White Tablecloth" program represented by Ben & Jerry's employees.
Before proceeding to the merits of the breach of contract claim,
the Court notes Plaintiffs' breach of covenant claim is based on
precisely the same conduct.  Vermont courts will not recognize a

separate cause of action for violation of the covenant of good faith and fair dealing where a plaintiff pleads a breach of contract claim based on the same conduct.  See Monahan v. GMAC Mortgage Corp., 179 Vt. 167, 187 n.5, 893 A.2d 298 (2005). Because the Court finds Plaintiffs cannot show any "plausible entitlement to relief" for breach of contract under Rule 12(b)(6), that claim is dismissed.  Under Vermont law, "[e]nforcement of any prior oral agreement . . . is barred by a merger clause in the written contract" and "[e]ven without the merger clause, the parol evidence rule would bar enforcement of a prior or contemporaneous oral agreement that varies or contradicts the terms of the written agreement."  Hoeker v. Dep't of Soc. & Rehab. Servs., 171 Vt. 620, 621, 765 A.2d 495, 498 (2000).

Ben & Jerry's reserved the right under the Franchise Agreement "[t]o sell or distribute, directly or indirectly, or license others to sell or distribute, under the Proprietary Marks, at any location (notwithstanding its proximity to the Authorized Location) whether within or outside the Territory, (i) prepackaged and other Products . . . for sale made at restaurants." (Paper 64-19 at 6 (emphasis added).)  Thus, Plaintiffs' claim that Ben & Jerry's could not sell pre-packaged products through two area restaurants contradicts, or at least varies, this provision.  Moreover, the Franchise Agreement

16

contains a merger clause stating, "[t]his Agreement, the
attachments hereto, and the documents referred to herein
constitute the entire Agreement between BEN & JERRY's and
OPERATOR concerning the subject matter hereof, and supersede any
prior agreements . . . ." (Paper 64-19 at 45.)  Thus, evidence of
Defendants' alleged "White Napkin, White Tablecloth" policy is
not admissible to prove the breach of contract claim.  Because
Ben & Jerry's was not prohibited under the Franchise Agreement
from selling pre-packaged products through restaurants, including
restaurants not deemed "White Napkin, White Tablecloth",
Plaintiffs' breach of contract claim is dismissed.  Plaintiffs'
breach of covenant claim, however, is preserved.

Plaintiffs next claim Defendants breached the Franchise
Agreement by misusing advertising fees paid by franchisees to
promote a political agenda rather than advertise products.
Defendants argue Plaintiffs cannot show any "plausible
entitlement to relief" under Rule 12(b)(6) because the claim
contradicts the Franchise Agreement.  Under the Franchise
Agreement, the parties agreed "Ben & Jerry's shall direct all
marketing programs, with <u>sole discretion</u> over the concepts,
materials, and media used in such programs and the placement and
allocation thereof." (Paper 64-19 at 26 (emphasis added).)  If
the Court accepts as true, as it must, Plaintiffs' contention
that these programs did not constitute advertising, the

allegations suffice to state a claim. Defendants' motion to dismiss is denied.

Plaintiffs next claim Ben & Jerry's breached the Franchise Agreement by failing to approve the Plaintiffs' Christianburg location, although it met Ben & Jerry's prerequisites. Defendants argue Plaintiffs cannot show any "plausible entitlement to relief" for this claim under Rule 12(b)(6) because Ben & Jerry's reserved sole discretion to approve or disapprove sites. The Court agrees. The parties' Development Agreement states, "Ben & Jerry's shall have ten (10) business days after receipt of [the site evaluation package] from DEVELOPER to approve or disapprove, in its sole discretion, each proposed site for each Scoop Shop." (Paper 64-14 at 7-8 (emphasis added).) Plaintiffs' claim, even if true, does not state a breach of the Development Agreement. In any event, Plaintiffs released this claim by entering into the Mutual Termination and Release Agreement, under which each party released all claims related to the Development Agreement. (Paper 64-15 at 3.) The claim is therefore dismissed.[2]

_____

[2]Plaintiffs stated in their opposition paper that this conduct also constitutes a breach of the covenant of good faith and fair dealing. (Paper 73 at 23.) The Amended Complaint states no such claim, and parties may not amend the complaint through supportive memoranda. Wright, 152 F.3d at 178. Under Federal Rule of Civil Procedure 8, Plaintiffs must make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2)(emphasis added). Rule 8 "does not require detailed factual pleading, [but] a plaintiff's assertions must still direct the defendant to the factual cause

Plaintiffs also allege Ben & Jerry's breached the Franchise Agreement because there was "a general lack of marketing support." Compl. ¶ 102. Plaintiffs attempt to supplement this allegation in their opposition paper, stating "[a]t no time did Defendants purchase, furnish, or distribute advertising to the benefit of Plaintiffs" and Defendants "fail[ed] to advertise at all." (Paper 73 at 20-21.) These supplementary allegations do not appear in the Amended Complaint, and parties may not amend the complaint through supportive memoranda. <u>Wright & Ernst & Young LLP</u>, 152 F.3d 169, 178 (2d Cir. 1998). The Court nevertheless denies Defendants' motion to dismiss the "general lack of marketing support" claim because there are allegations in the Amended Complaint relevant to marketing and advertising support.

Plaintiffs' final breach of contract claim alleges Defendants failed to provide "ongoing assistance" in violation of Ben & Jerry's duties under Franchise Agreement Paragraphs 3.2, 3.3, 3.6, 3.7 and 6.2. Defendants argue Plaintiffs cannot show any "plausible entitlement to relief" for this claim under Rule 12(b)(6) because, under the Franchise Agreement, Ben & Jerry's

---

of the plaintiff's alleged injury." <u>McTigue v. City of Chicago</u>, 60 F.3d 381, 382 (7ᵗʰ Cir. 1995). Likewise, although Federal Rule of Civil Procedure 10 provides for a party to adopt by reference allegations made elsewhere in the pleading, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

was obligated to provide ongoing support only as it deemed appropriate or necessary. (Document 64-2 at 23.) Defendants also argue the claim should be dismissed because Plaintiffs have not stated a claim, but rather legal conclusions. <u>See</u> <u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") The Court will not dismiss the claim at this time because there appear to be allegations in the Amended Complaint relevant to business support; however, Plaintiffs' approach of listing contract provisions and summarily stating Defendants breached the provisions will not survive a motion for summary judgment.

C.    <u>Unjust Enrichment (Count VIII) and Quantum Meruit (Count IX)</u>

Defendants' motion to dismiss is denied as to Plaintiffs' claims of unjust enrichment and quantum meruit. The claims are properly pled in that Plaintiffs have also pled fraudulent inducement and the Amended Complaint includes allegations that Defendants profited at Plaintiffs' expense.

D.    <u>Virginia Retail Franchising Act (Count X), Virginia Disclosure Registration Act Violation (Count XI), and Vermont Consumer Fraud Protection Act (Count XII)</u>

1.    <u>Virginia Retail Franchising Act</u>

Plaintiffs seek relief under the Virginia Retail Franchising Act ("VRFA") § 13.1-563, which provides in relevant part:

20

It shall be unlawful for any person, in connection with the sale or offer to sell a franchise in this Commonwealth, directly or indirectly:

1.  To employ any device, scheme, or artifice to defraud;

2.  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to avoid misleading the offeree;

3.  To engage in any transaction, practice, or course of business that operates or would operate as a fraud or deceit upon the franchisee.

Va. Code § 13.1-563. This claim must be dismissed because the VRFA does not grant plaintiffs a direct right of action for violations of § 13.1-563. Turner v. Subaru of America, Inc., 566 F. Supp. 143, 151 (W.D. Va. 1983). Rather, "[a]ggrieved persons may void any franchises signed under the circumstances described in § 13.1-563" and "then sue for damages resulting therefrom." Id. (citing Va. Code §§ 13.1-565, 13.1-571(a)); see also Principe v. McDonald's Corp., 463 F. Supp. 1149, 1151 (W.D. Va. 1979) ("[P]laintiffs are bound by Va.Code s 13.1-571 (1978 Repl.) prescribing the conditions under which they may seek civil remedies under the VRFA. Plaintiffs must either seek to void their franchise under Va.Code s 13.1-565 (1978 Repl.) or they must show damages pursuant to Va.Code s 13.1-564 (1978 Repl.)"). Under § 13.1-565,

> Any franchise may be declared void by
> the franchisee at his option by sending
> a written declaration of that fact and
> the reasons therefor to the franchisor
> by registered or certified mail if:
>
> 1. The franchisor's offer to sell a
>    franchise was unlawful, as provided in §
>    13.1-560 or § 13.1-563, provided that
>    the franchisee send such written
>    declaration <u>within 72 hours after
>    discovery thereof but not more than 90
>    days after execution of the franchise</u>.

Va. Code § 13.1-565 (emphasis added). Plaintiffs have never declared the franchise void under § 13.1-565, and the time to do so has expired. Plaintiffs' claim under VRFA § 13.1-565 is dismissed.

    2.  <u>Virginia Disclosure Registration Act</u>

Plaintiffs next claim Ben & Jerry's violated § 13.1-564 of the Virginia Disclosure Registration Act, a subpart of the VRFA, which provides: "It shall be unlawful for a franchisor to cancel a franchise without reasonable cause or to use undue influence to induce a franchisee to surrender any right given to him by any provision contained in the franchise." Va. Code § 13.1-564. Plaintiffs contend Ben & Jerry's violated the second part of this provision, but do not state what right Plaintiffs were allegedly induced to surrender or how Defendants influenced them to surrender the right. Legal conclusions alone do not state a claim, <u>Smith</u>, 291 F.3d at 240; therefore, Defendants' motion to dismiss is granted.

3.  Vermont Consumer Fraud Protection Act

Plaintiffs claim Ben & Jerry's provided false or misleading sales data in UFOC Item 19 in violation of Vermont Consumer Fraud Act Section 2453, which prohibits "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." 9 V.S.A § 2453.  Defendants argue Plaintiffs fail to state a claim under this statute because the statute applies only to Vermont citizens.  The Vermont Supreme Court has stated "Vermont's consumer fraud laws . . . were passed to protect [the] state's citizens from unfair and deceptive business practices and to encourage a commercial environment highlighted by integrity and fairness."  See Gramatan Home Investors Corp. v. Starling, 143 Vt. 527, 536, 470 A.2d 1157, 1162 (1983) (citing 9 V.S.A. § 2451) (emphasis added); Turner v. Baxley, 354 F. Supp. 963, 970 (D. Vt. 1972) ("Proceedings under the Vermont Consumers Fraud Act are designed to protect the people of Vermont from fraudulent practices.").  Plaintiffs are citizens of Virginia, not Vermont.  Furthermore, Plaintiffs' franchise was established and operated in Virginia.  The Court finds based on both of these factors that there is insufficient nexus to Vermont to grant Plaintiffs standing as a Vermont consumer.  The Court express no opinion, however, on whether Vermont's Consumer Fraud Act precludes all nonresidents from suing under the Act, regardless of where the commerce occurred.

See <u>Lyon v. Caterpillar, Inc.</u>, 194 F.R.D. 206, 215 (E.D. Pa. 2000) ("State consumer fraud acts are designed to either protect state residents or protect consumers engaged in transactions within the state.").

IV.  <u>Conclusion</u>

For the reasons stated above, Defendants' Motion to Dismiss (Paper 64) is GRANTED in part and DENIED in part as follows:

A.  <u>Count I – Fraudulent Inducement</u>

Defendants' motion to dismiss Plaintiffs' fraudulent inducement claim re:

1.  UFOC Item 19 is GRANTED; the claim is DISMISSED;

2.  "White Napkin, White Tablecloth" statements barred by the economic loss and parol evidence rules is DENIED; and

3.  false misrepresentations made on a company website (extranet)is GRANTED; the claim is DISMISSED.

B.  <u>Count II – Fraudulent Nondisclosure</u>

Defendant's motion to dismiss Plaintiffs' claim for fraudulent nondisclosure (UFOC Item 19 and extranet) is GRANTED. Count II is DISMISSED.

C.  <u>Counts III – Fraud; Count IV – Negligent Misrepresentation; & Count V – Estoppel</u>

Defendants' motion to dismiss Plaintiffs' fraud (Count III), negligent misrepresentation (Count IV) and estoppel (Count V) claims re:

> 1. "White Napkin, White Tablecloth" statements is DENIED; and
>
> 2. UFOC Item 19 and the extranet is GRANTED; the claims are DISMISSED.

### D. <u>Count VI - Breach of Contract</u>

Defendant's motion to dismiss Plaintiffs' claim for breach of contract re:

> 1. failure to enforce "White Napkin, White Tablecloth" program is GRANTED; the claim is DISMISSED;
>
> 2. misuse of advertising fees is DENIED;
>
> 3. failure to approve Christianburg location is GRANTED; the claim is DISMISSED;
>
> 4. lack of marketing support is DENIED; and
>
> 5. failure to provide training and ongoing support is DENIED.

### E. <u>Count VII - Breach of the Covenant of Good Faith and Fair Dealing</u>

Defendant's motion to dismiss Plaintiffs' claim for breach of the covenant of good faith and fair dealing by selling Ben & Jerry's products at restaurants that did not fit Defendants' "White Napkin, White Tablecloth" restaurant description is DENIED.

### F. <u>Count VIII - Unjust Enrichment</u>

Defendant's motion to dismiss Plaintiffs' claim of unjust enrichment is DENIED.

G.    Count IX - Quantum Meruit

Defendant's motion to dismiss Plaintiffs' claim of quantum meruit is DENIED.

H.    Count X - Virginia Retail Franchising Act

Defendant's motion to dismiss Plaintiffs' claim under the Virginia Retail Franchising Act is GRANTED; Count X is DISMISSED.

I.    Count XI - Disclosure Registration Act Violation

Defendant's motion to dismiss Plaintiffs' claim under the Virginia Disclosure Registration Act is GRANTED; Count XI is DISMISSED.

J.    Count XII - Vermont Consumer Fraud Protection Act

Defendant's motion to dismiss Plaintiffs' claim under the Vermont Consumer Fraud Protection Act is GRANTED; Count XII is DISMISSED.

Defendants' Motion to Dismiss and Request for Oral Arguemnt (Paper 38) is DENIED as moot.  Defendants' Request for Oral Argument (Paper 64) is DENIED.

Discovery was stayed in this case pending issuance of the ruling on the Motion to Dismiss Amended Complaint.  (Paper 84.) Accordingly, the stay is hereby lifted and counsel shall submit a proposed Amended Discovery Schedule/Order for the Court's consideration by September 1, 2009.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 10th day of August, 2009.

/s/ J. Garvan Murtha
J. Garvan Murtha
Senior United States District Judge